STATE v. ARTHUR OELSCHLAGER.[1]

May 22, 1942.

No. 33,137.

*Bryan W. Place,* for appellant.

*R. S. Wiggin,* City Attorney, and *Leo P. McHale,* Assistant City Attorney, for the State.

Per Curiam.

Defendant, convicted of violating a liquor ordinance of the city of Minneapolis, appeals here, contending that the evidence is insufficient to support the conviction.

[1]Reported in 4 N. W. (2d) 102.

Defendant operates a small grocery store in Minneapolis. He is a dealer, licensed to sell beer in bottles for consumption off the premises. The charge preferred against him is the unlicensed sale of beer for consumption on the premises. The evidence adduced to establish a violation consisted solely of the testimony of three police officers. The officers testified that they had observed lights in defendant's grocery at unusual hours and consequently viewed the place with suspicion. At 1:30 in the morning of October 10, 1941, two of the officers, Jones and Piepgras, were cruising in a police car in the neighborhood. In passing defendant's store, they looked through the window and saw a man drinking from a bottle which they identified as a beer bottle. Continuing on, they drove around the block and returned. Entering the store, they were met at the door by a man carrying a package. This man was stopped and his package examined, but it was found to contain only some groceries. On a shelf they found an empty beer bottle. In the back room, occupied by defendant as part of his residence, they discovered defendant and a friend eating lunch.

As evidence to the contrary, defendant denied having sold beer for consumption on the premises. He testified that upon this occasion, while eating lunch, he heard a rattling noise at the door. Thinking it was his son, who worked at night in a bakery and returned home at irregular hours, defendant went to the door. There he discovered that a customer wished to be admitted to make a purchase. The customer testified that while he was in the store he drank no beer but admits having helped himself to a bottle of *Seven-Up*—a soft drink—for which he did not pay defendant. Defendant explained that his beverage customers frequently helped themselves out of his soft-drink container.

We think that the evidence is wholly insufficient to support the conviction. As the case was tried without a reporter, the only record before us consists of a narrative statement of the testimony. The only direct evidence relating to the alleged violation is the officers' testimony that they saw a man drinking from a beer bottle. At one point in the record it appears that Officer

Jones testified "that a man in the store was drinking from a bottle." Of course this testimony proves exactly nothing. However, later on, "Officer Jones testified that when he looked in the man was drinking out of a beer bottle." Had the officers taken the trouble to stop, enter the store, and apprehend the man in the act of drinking from the bottle and had they found enough to connect that bottle to some act of the defendant, a judicial appraisal of the sufficiency of the evidence might not be so critical. Instead, however, they cautiously drove around the block. Upon returning to the store, they found nothing except an empty beer bottle to substantiate their belief that a crime had been committed. An empty beer bottle in a store licensed to sell beer is altogether lacking in evidentiary significance. Apparently the officers made no effort to ascertain whether the customer manifested signs of recent imbibing. Nor does the record show that defendant was even in the front part of the store at that time. For all that appears, defendant may have been in the back room with his friend when the officers passed by. If the customer was drinking from a beer bottle, it is entirely conceivable that he had taken the bottle without the defendant's knowledge or consent. At least it does appear that he did not pay for the drink, whatever it was. The testimony that the vocation followed by defendant's son occasioned the lights at peculiar hours was neither refuted nor denied. Plainly, therefore, any adverse implication from the presence of lights at unusual hours was convincingly overcome.

Although it is true that a violation of municipal ordinance need not be proved beyond reasonable doubt (State v. Jamieson, 211 Minn. 262, 300 N. W. 809), certainly this court cannot sanction a conviction grounded in evidence so patently insufficient. When prosecutions must be based upon evidence inherently so infirm, it would seem to indicate that law enforcement officers have extreme difficulty in finding satisfactory evidence of liquor violations. However, this court is not so easily beguiled into believing that violations cannot be discovered and proved by evidence which not

488

only meets, but far exceeds, the persuasive quality required to support a conviction.

Judgment reversed.